UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

RODERICK KEITH JONES                          CIVIL ACTION

VERSUS                                        NO:  05-1370

LOCKHEED MARTIN                               SECTION: "S" (2)
CORPORATION D/B/A LOCKHEED
MARTIN MICHOUD SPACE
SYSTEMS


ORDER AND REASONS

IT IS HEREBY ORDERED that Lockheed Martin Corporation's motion for summary

judgment is GRANTED.  (Document #36.)

I. BACKGROUND

At its Michoud plant in eastern New Orleans, Lockheed Martin Corporation (Lockheed)

manufactures and builds the external fuel tank used for the space shuttle.  In February 2003, the

Shuttle Columbia accident occurred, and the investigation focused on whether a piece of foam

from the external fuel tank built at Michoud had broken free and damaged tiles on the shuttle.

One of the principle inquiries in the investigation was whether production of the tank complied

with all guidelines.  The investigation revealed that there had been an occasional noncompliance

with the certification policy for personnel working on the tank.  Lockheed devised a corrective

action plan to address the certification issue in September 2003, and supervisors were instructed

to comply strictly with the certification and its requirements.

Roderick Keith Jones was hired by Lockheed in May 1994 as a quality inspector with duties related to the external fuel tank.  In May 2001, he received a merit promotion to associate manager.  In July 2003, Jones was transferred to the Final Assembly and MOD center as an associate manager.

On January 13, 2004, Jones was diagnosed with atopic dermatitis/lichen simplex.  Atopic dermatitis/lichen simplex causes a significant limitation of major life activities, including an ability to concentrate and sleep.  His physician placed him on short-term medical leave.

On May 10, 2004, Jones returned to work, and Lockheed terminated him.  An investigation had been conducted into a charge that, as the associate manager responsible for the electrical harness routing on tank ET-126, Jones assigned an uncertified employee, Randy McCullen, to work on the harness routing.

Jones filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) and the Louisiana Commission on Human Rights raising claims of employment discrimination based on race and his disability.  Def.'s exh. 19.  The EEOC dismissed the charge because there was no evidence to support the allegations and issued a "Notice of Right to Sue."  Def's. exh. 20.

Jones filed a complaint alleging claims of discrimination based on race and disability and retaliation under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*; 42 U.S.C. § 1981; Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*; and the Louisiana Employment Discrimination Act; and violations of the Family Medical Leave Act, 29 U.S.C. § 2601 *et seq.*

2

and 5 U.S.C. § 6381 *et seq.*[1]  He alleges that he was treated more harshly than similarly situated white managers and managers who do not suffer from a serious medical condition and that he was retaliated against because of his complaints about race discrimination and his need to take medical leave.  Lockheed filed a motion for summary judgment.

## II. DISCUSSION

### A.  Legal standard

Summary judgment is proper when, viewing the evidence in the light most favorable to the non-movant, "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."  Amburgey v. Corhart Refractories Corp., 936 F.2d 805, 809 (5th Cir. 1991); Fed. R. Civ. P. 56(c).  If the moving party meets the initial burden of establishing that there is no genuine issue, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial.  Celotex Corp. v. Catrett, 106 S.Ct. 2548, 2552 (1986).  The nonmovant cannot satisfy the summary judgment burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence.  Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  If the opposing party bears the burden of proof at trial, the moving party does not have to submit evidentiary documents to properly support its motion, but need only point out the absence of evidence supporting the essential elements of the opposing party's case.  Saunders v. Michelin Tire Corp., 942 F.2d 299, 301 (5th Cir. 1991).

### B.  Title VII claim of discrimination in employment based on race

---

[1]  On July 27, 2005, the court granted Lockheed's unopposed motion to dismiss additional state law claims for retaliation and negligent or intentional infliction of emotional distress.

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). In <u>McDonnell Douglas Corp. v. Green</u>, 93 S. Ct. 1817 (1973), the Supreme Court "established an allocation of the burden of production and an order for the presentation of proof in Title VII discriminatory-treatment cases." <u>St. Mary's Honor Center v. Hicks</u>, 113 S. Ct. 2742, 2746 (1993). "First, the plaintiff must establish a *prima facie* case of discrimination." <u>See</u> <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 120 S.Ct. 2097, 2106 (2000) (citing <u>Texas Dep't of Community Affairs v. Burdine</u>, 101 S.Ct. 1089 (1981)). "Establishment of the *prima facie* case in effect creates a presumption that the employer unlawfully discriminated against the employee." <u>Burdine</u>, 101 S.Ct. at 1094. If the burden is satisfied, the burden shifts to the defendant to produce evidence of a legitimate, nondiscriminatory reason. <u>See</u> <u>Reeves</u>, 120 S.Ct. at 2106. If the defendant meets that burden of production, the presumption disappears. <u>Id</u>.

The Supreme Court reiterated that the ultimate burden of showing intentional discrimination remains with the plaintiff. <u>Id</u>. at 2106. The plaintiff "must be afforded the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." <u>Id</u>. (internal quotation and citation omitted). The evidence that established the plaintiff's *prima facie* case and any inference drawn therefrom should still be considered. <u>Id</u>. However, proof that the employer's reason is contrived does not establish that the plaintiff's reason is correct. <u>Id</u>. at 2108. "[A]n employer would be entitled to judgment as a matter of law if the record conclusively

revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred." Id. at 2109.  Whether judgment as a matter of law is appropriate depends on factors which include "the strength of the plaintiff's *prima facie case*, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that may be considered." Id.  If the plaintiff establishes a *prima facie* case and produces sufficient evidence to reject the employer's explanation, the plaintiff need not "always introduce additional, independent evidence of discrimination." Id.

### 1. *Prima facie* case of racial discrimination

"In order to establish a *prima facie* case of discrimination on the basis of race or national origin, a plaintiff must show he or she was: (1) a member of a protected class; (2) qualified for the position held; (3) subject to an adverse employment action; and (4) treated differently from others similarly situated [of a different race]." Abarca v. Metropolitan Transit Authority, 404 F.3d 938, 941 (5th Cir. 2005); Jones v. Overnite Transp. Co., 212 Fed. Appx. 268, 272-73 (5th Cir. 2006).

Lockheed concedes that Jones is a member of a protected class, was qualified for his position, and that he suffered an adverse employment action.  Lockheed contends that Jones can make no showing that he was treated differently from other similarly situated employees outside of the protected group.

Jones presents the following facts to establish a *prima facie* case.  In July 2003, Jones

assumed Michael Holcomb's position of associate manager in the Final Assembly Department, and Holcomb was assigned to Jones's former position of associate manager in the Major Weld Department.  Robert Zerkus was also an associate manager in Final Assembly.  Dennis Silbernagel and Randy McCullen had worked as a team for over ten year installing electrical harnesses in Final Assembly and were supervised by Holcomb and Zerkus for at least three of those years.  Silbernagel was the lead certified worker, and McCullen was his assistant. Although Holcomb and Zerkus were aware that McCullen was not certified to perform electrical harness routing installations on external tanks, they were never written up for the certification non-compliance issue.  The court concludes that Jones has alleged facts sufficient to establish a *prima facie* case that he was treated differently from similarly situated employees, thus creating a presumption that the employer unlawfully discriminated against the employee.

### 2.  Evidence of Lockheed's legitimate, nondiscriminatory reason

Lockheed contends that the nondiscrimiantory reason for Jones's termination is that he violated Standard Procedure 122.1.11.J.1[2] by permitting an uncertified employee to work on the external fuel tank and Company Rules/Procedures #5 and #7 through improper conduct toward another employee.[3]  See Def.'s exh. 12, 13.

---

[2]   "ALL DEPARTMENTS
1.  Assure that only properly certified personnel are assigned to perform tasks, functions or crew activity requiring certification."  Def.'s exh. 3.

[3]   The charge alleged that Jones insisted that an employee perform a job assignment without appropriate documentation.  When the employee objected, Jones gave him a water mopping assignment solely to humiliate the employee.  Def.'s exh. 12.  Company Rules/Procedures #5 states in part:  "the use of offensive language toward another person is

Lockheed contends that the decision to terminate Jones was reached according to Lockheed's established disciplinary policy.  Cheryl Alexander, an African American and the director of Human Resources at Michoud, explained the procedure as follows:

> that when violations of policy or procedure are alleged, these are routinely investigated by Wes Bayas and/or others in the Industrial Relations Department;
> that the Industrial Relations Department investigator interviews individuals, collects statements, reviews documents and prepares a report which is forwarded to the Administrative Review Committee (ARC);
> that under Lockheed Martin's policies, disciplinary matters involving salaried management employees are referred to the ARC for review and recommendation
> that an Executive Review Committee (ERC) reviews the recommendation of the ARC and has the ultimate authority on the nature of any discipline which is imposed as set forth in Standard Procedure 2-7.

Def.'s exh. 16, Alexander affidavit.

Wes Bayas, an African American, conducted an investigation of the violations. Assembly supervisor, Richard Walker, gave a statement to Bayas that "Randy assisted Dennis in accomplishing Harness Installation by applying protective padding to the C/T, cutting Kapton tape, cutting lacing cord and supporting hardware, etc."  Def.'s exh. 13, exh. A.  Randy McCullen and Dennis Silbernagel verified the statement.  Id., exh. C. Jones responded that "Randy was only assisting Dennis and that this was not a stamp warranty issue due to the fact that he was not performing the critical operation of routing that would require a certification." Id., exh. B.  Bayas prepared a report for Albert Labat, the Labor Relations Senior Manager.

On January 14, 2004, the ARC reviewed the labor relations investigation regarding Jones. but the group was unable to reach a consensus.. Def.'s exh. 29.  At a subsequent meeting,

---

prohibited."  Rule #7 states in part:  "conduct detrimental to the interest of other employees."

the ARC recommended that Jones receive a four week suspension for violation of procedures

and for his conduct with a represented employee.  Def.'s exh. 14 and 29.

The matter was forwarded to the ERC.  The two voting members of ERC were

Alexander, the highest ranking Human Resource official at Michoud, and Brent Clayburn, the

Director of Business Operations.[4]   Jones does not allege that Alexander or Clayburn had any

reason to discriminate against him because of race or disability.  Plaintiff's exh. A, 274-75.

Alexander states that the committee relied on materials from the investigation, written

statements, and Jones's prior disciplinary history and decided to terminate for the following

reasons:

> Mr. Jones has received verbal and written disciplinary actions relating to
> following procedures/Stamp Warranty–
>
>     On 10/18/2000–inspected and accepted out-of-tolerance mismatch–Stamp
> Warranty.  Written Reprimand
>     On 02/22/2002–time card–overtime–failure to record actual time worked.
> Five-Day suspension
>     On 5/22/2003 (Active Discipline)–instructed work to be done without Quality
> Control authorization.  Written reprimand

Def.'s exh. 15.

### 3.  Pretext for discrimination

Jones contends that Lockheed's nondiscriminatory reason is a pretext for racial

discrimination.  Jones contends that he was an excellent performer with an advancing career

---

[4]   Alexander testified that the ERC consisted of four people: Tom Ferek, legal counsel;
Lilian Baham, , the ethics officer; Clayburn; and Alexander.  Plaintiff's exh. I, 44-45.  All four
members review and discuss the information, but only Clayburn and Alexander were voting
members.  Id. at 45.

until he complained to Harold Simoneaux (Caucasian), the Director of Manufacturing and Tests,
that Michael McGehee (Caucasian), a senior manager in the Major Weld area, was trying to
destroy his career based on race discrimination.  Jones asked Michael Javery (African
American), the Vice-president of Operations and Simoneaux's superior, to facilitate a transfer to
Final Assembly.  The transfer occurred in July 2003, and Jones worked for Robert Graschel, who
reported to Simoneaux.

Jones contends that, when he replaced Holcomb in Final Assembly, Graschel exhibited a
retaliatory and discriminatory attitude toward him.  Shortly thereafter, Jones was written up by
Simoneaux for "demeaning an hourly employee," Tommy Barrett,  and allowing a certification
non-compliance violation.

Jones contends that Bayas approached the investigation of the September 22-26, 2003,
non-compliance violation regarding McCullen as a prosecutor and refused to listen to
explanations.  Jones contends that Bayas excluded exculpatory information from his report
concerning McCullen's longstanding practice of working on the electrical harness routing and
Barrett's previous conflicts with managers.

Jones further contends that he received disparate treatment because Holcomb and Zerkus,
Caucasian managers, were not disciplined even though they allowed Silbernagel and McCullen
to install electrical harnesses without proper certification  Jones contends that Lockheed has a
policy of retroactive discipline and that all supervisors who knew of non-compliance should
have been disciplined.

Jones contends that racially discriminatory animus is present, even though Bayas, Javery,

and Alexander are African American.  He argues that, after many years of investigation, Bayas has never found a valid complaint of racial discrimination, and Javery knew of no claim of racial discrimination in over 30 years with Lockheed.  Jones contends that the ARC and ERC process do not insulate Lockheed because he was not allowed to provide a complete picture to the ERC as to why the allegations against him constituted selective discipline.  He argues that Clayburn and Alexander were the "cat's paw"[5] of the discriminatory leverage and influence of Simoneaux, Graschel, and Bayas.

The evidence does not establish that the reasons offered by Lockheed were not its true reasons for the termination.  The following evidence, which Jones does not dispute, supports Lockheed's position that the termination was not based on race.

Jones testified in his deposition that, before the September 2003, incident for which he was terminated, Graschel told him that other managers had allowed uncertified people to work on the external fuel tank and that it could not happen again.  Plaintiff's exh. A, 88-89. Simoneaux testified in his deposition that, when the certification issue first arose, only the front line supervisors[6] were held accountable.  Plaintiff's exh. C, 153.  At a later time, management advertised the importance of certification, but the activity of assigning uncertified employees

---

[5]    The term "cat's paw" means "the discriminatory animus of a manager can be imputed to the ultimate decision maker if the decision maker acted as a rubber stamp or the "cat's paw" for the subordinate employee's prejudice."  Laxton v. Gap, Inc., 333 F.3d 572, 584 (5th Cir. 2003.)

[6]    First-line supervisors report to associate managers such as Holcomb and Jones. Plaintiff's exh. B., 73.  The first line supervisor and associate managers are responsible for directing the work force and ensuring that employees are certified.  Id., 73.  Senior managers, such as Graschel, do not give day-to-day direction.  Id., 74.

continued.  An investigation was held, and it was decided that supervisors and foremen would also be held accountable.  <u>Id</u>., 154.  Accordingly, Jones was fully aware that a renewed emphasis was placed on compliance with certification and that associate managers would be held accountable in the future, even though the previous practice had been to hold only first-line supervisors accountable.

Further, the evidence indicates that Lockheed followed its procedure and terminated at least one similarly situated employee for a similar infraction.  The defendant presents the affidavit of Labat in support of its contention that the department investigates complaints about employees without regard to their race, sex, age, disability, or any other protected category.  Def.'s exh. 26.  After the Columbia accident, several employees, black and white, male and female, were reprimanded, suspended, or terminated  based on the certification policy.  <u>Id</u>.  Specifically, the department investigated Glenn Turner, a Caucasian, for claims involving uncertified workers on the external tank.  <u>Id</u>. On February 16, 2004, Turner was terminated for assigning and allowing an employee to perform work without the required certification in violation of company procedures and rules.  Def.'s exh. 22.

The evidence does not establish that Simoneaux exerted undue influence on the ARC to terminate Jones.  Based on the information presented, the ARC recommended that Jones be suspended, not terminated.  Alexander states that the ERC reviewed the information that was before it and that it would have reviewed any relevant information that was provided.  Plaintiff's exh. I, 60.  The decision of the ERC was based on the two allegations:  the certification issue and the humiliation of an employee.  Alexander testified that it was not an easy decision, and she

11

could not speculate what the result would have been if the ERC had been provided with information that the certification requirement had been violated by several managers over a long period of time.  Id., 62-65.  Clayburn testified that Jones's case was discussed by the ERC members in "a lot of detail."  Plaintiff's exh. J, 27-28.  He stated that the cumulative impact of the previous disciplinary actions since 2000 was a factor in the ERC's decision not to follow the ARC's recommendation that Jones be suspended.  Id., 29.

Accordingly, there is uncontroverted evidence that supports Lockheed's nondiscriminatory reason for Jones's termination, and Jones has not shown by a preponderance of the evidence that discrimination has occurred.  The motion for summary judgment on the Title VII claim of discrimination based on race is granted.

## C.  Louisiana Employment Discrimination Act

Jones alleges that Lockheed discriminated against him based on race under Louisiana discrimination laws.  The standard governing claims of discrimination under federal law and state law are materially indistinguishable.  See Willis v. Coca Cola Enterprises, Inc., 445 F.3d 413 (5th Cir. 2006); LaDay v. Catalyst Technology, Inc., 302 F.3d 474, 477 (5th Cir. 2002).  For the same reason that Jones has not established discrimination under federal law, summary judgment is granted as to his claims of discrimination under Louisiana law.

## D.  Retaliation under Title VII and § 1981

Jones contends that he was retaliated against because he complained about racial discrimination to Bayas, Simoneaux, and Javery.  Jones argues that he engaged in protected activity and that a retaliatory animus caused by his complaints of race discrimination resulted in

disparate treatment.

"In a discrimination case, the district court does not have subject matter jurisdiction until the EEOC has first had the opportunity to obtain voluntary compliance." Kebiro v. Walmart, 193 Fed. Appx. 365, 367 (5th Cir. 2006) (internal quotation and citation omitted). "The relevant question is whether the claims presented in the district court could reasonably be expected to grow out of the charge of discrimination to the EEOC." Id.

Jones's complaint with the EEOC raised claims of discrimination under Title VII based on race and disability, but did not allege that he had been retaliated against for engaging in protected activity. This is not a case in which Jones is raising a claim of retaliation after or as a result of filing a complaint with the EEOC. Accordingly, the court lacks subject matter jurisdiction, and the Title VII retaliation claim is dismissed.

Further, Jones has not established a *prima facie* retaliation claim under § 1981. In order to establish a *prima facie* case of retaliation, Jones must demonstrate that he engaged in protected activity, an adverse employment action occurred, and a causal link existed between the protected activity and the adverse employment action. See Fierros v. Tex. Dept. of Health, 274 F.3d 187, 191 (5th Cir. 2001). The evidence does not establish a causal link between protected activity and Jones's termination.

Jones presents evidence that he lodged one written and one verbal complaint against McGehee. Jones's concern was that McGehee was trying to undermine his career, and he believed that the discrimination was based on race. Plaintiff's exh. A, 134, 186. The only facts that Jones provided that he interpreted as racial discrimination were that he was not a "good old

13

boy,"  he did not "get a very warm welcome," and he was not wanted.  Id,, 205.  Jones did not

file an EEOC complaint or an internal EEO complaint because he "wanted to try to work the

situation within [his] chain of command" by talking to Simoneaux and Javery.  Id., 185.  There is

no indication that the matter concerning McGehee was considered by the ARC or ERC.

Accordingly, summary judgment is granted as to the § 1981 retaliation claim.

**E.  Family Medical Leave Act**

  Jones contends that the decision to bring the disciplinary charges and to terminate him

were made because he took FMLA leave from January 13, 2004 to May 10, 2004.

  "The FMLA prohibits employers from interfering with, restraining, or denying the

exercise or the attempt to exercise any right provided under the act."  Richardson v. Monitronics

Intern, Inc., 434 F.3d 327, 333 (5th Cir. 2005); 29 U.S.C. § 2615(a)(1).  "Concomitantly, the

FMLA prohibits employers from discharging or in any other manner discriminating against an

individual for opposing any practice made unlawful by the act."  Id.; 29 U.S.C. § 2615(a)(2).

"To make a *prima facie* case of retaliatory discharge, the employee must show that (1) she

engaged in protected activity, (2) the employer discharged her, and (3) there is a causal link

between the protected activity and the discharge."  Id.

  Jones has not shown that there is a causal link between his taking leave and his

termination.  The conduct that was considered and that led to his termination occurred prior to

the commencement of Jones's leave.  Further, the EEOC found that "[t]he record also shows that

any medical condition you have was not a factor in the decision to discharge you."  Def.'s exh.

20.  Because Jones has not established the causal link, he has not made a *prima facie* showing

under the FMLA.  Lockheed's motion for summary judgment is granted on this claim.

**F. Americans with Disabilities Act**

Jones contends that he was discriminated against and terminated because of his disability.
He alleges that atopic dermatitis/lichen is a disability under the ADA because it causes a
significant and permanent limitation of major life activities.  He alleges that, because of his
disability, Graschel examined his personnel history and resurrected allegations of misconduct to
justify his termination.

To prevail on an ADA claim, Jones must establish that 1) he has a disability; 2) he is
qualified for the position; and 3) he was discriminated against because of his disability.  See
Jenkins v. Cleco Power, L.L.C., 487 F.3d 309, 315 (5th Cir. 2007).  "ADA defines disability as a
physical or mental impairment that substantially limits one or more of the major life activities of
such individual."  Id. (internal quotation and citation omitted).  Assuming that Jones was
disabled, it is his burden to show that Lockheed failed to reasonably accommodate him.  Id.; 42
U.S.C. § 12112(b)(5).

Jones has not met his burden of showing discrimination because of disability.  Jones
received four months of leave, and there is no allegation that he requested an extension of his
leave or that he was disabled when he returned to work.

As to Jones's allegation that Lockheed retaliated against him by terminating him, his
claim is analyzed under the three-step framework of McDonnell Douglas.    Jenkins, 487 F.3d at
317.  "To establish a *prima facie* case of retaliation, [Jones] must prove that (1) he engaged in a
protected activity; (2) he suffered an adverse employment action; and (3) there is a causal link

15

between the first two elements." Id. at n.3.

Jones' retaliation claim does not meet the *prima facie* requirements. The record does not provide evidence that the ERC or ARC were aware of any disability or that their decisions to terminate him was based on his disability. Therefore, Jones has not established a *prima facie* case of retaliation.

Accordingly, Lockheed's motion for summary judgment is granted as to the ADA claim.

## III. CONCLUSION

The evidence supports Lockheed's nondiscriminatory reason for Jones's termination, and Jones's has not carried his burden of coming forth with evidence that discrimination occurred. For the same reason that Jones has not established discrimination under federal law, summary judgment is granted as to his claims of discrimination under Louisiana law. The court lacks subject matter jurisdiction over the Title VII retaliation claim because Jones did not raise the claim in his EEOC complaint. Further, Jones has not established a causal link between any protected activity and his termination to support a claim for retaliation under § 1981, the FMLA, or the ADA.

New Orleans, Louisiana, this __7th__ day of September, 2007.


**MARY ANN VIAL LEMMON**
**UNITED STATES DISTRICT JUDGE**